LAW OFFICES OF
# Murray Richman
2027 Williamsbridge Rd. Bronx, NY 10461
(718) 892-8588 • Fax (718) 518-0674

OF COUNSEL:
Renée C. Hill, Esq.
Stacey G. Richman, Esq.
Gisele M. Kalonzo, Esq.
Jeffrey P. Chartier, Esq.
Brian T. Pakett, Esq.
Don K. Taylor - Paralegal

March 20, 2008

Honorable Robert P. Patterson
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *United States v. Ernest DeAngelis*
07 CR 889-07 (RPP)

Dear Judge Patterson:

I am in receipt of the Presentence Investigation Report (hereinafter "PSI report"), dated March 10, 2008. The instant letter/memorandum addresses sentencing issues, which we believe are worthy of the Court's attention.

Mr. DeAngelis is scheduled to be sentenced on April 8, 2008, pursuant to a plea agreement, for participating, along with others, in a Conspiracy to Operate an Illegal Gambling Business. The PSI report was prepared by U.S. Probation Officer Robert Flemen.

### *History of Mr. DeAngelis*

Ernest DeAngelis was born in New York City on September 9, 1945. He is married, with four adult children. Both of his parents are deceased. His father was brutally murdered during a robbery in 1978. His mother succumbed to complications from diabetes in 2003.

Mr. DeAngelis' father's murder had a profound effect on him, leading to his attempt to commit suicide by jumping out of a third floor apartment window. As a result, he suffered many physical injuries, including a broken arm, leg, and shoulder which had to be surgically repaired. Mr. DeAngelis was also diagnosed with severe depression.

After managing to recover from the physical injuries, Mr. DeAngelis had to step into the role of caretaker for his mother and his three biological siblings. Over the course of years of hard work, he ascended to being a stock trader on Wall Street, despite only having a General Equivalency Diploma. His sheer determination made up for his lack of a formal education.

1

LAW OFFICES OF
# Murray Richman

Unfortunately, Mr. DeAngelis continued that have various psychological episodes during the course of his life and he was diagnosed, in 1985, as suffering from Bi-Polar I Disorder. This is a disorder which has caused Mr. DeAngelis to be hospitalized, for weeks at a time, on several different occasions. He will suffer from this disorder for the rest of his life.

Despite the challenges that he has faced, Mr. DeAngelis has been successful. As previously mentioned, he "rose through the ranks" to be a stock trader. He has been married fro 38 years and has produced four extremely successful daughters. One of his daughters is a neurologist, another a sales executive, and his twin daughters are respectively employed as a sales manager and an editor. To date, Mr. DeAngelis continues to care for his family emotionally and financially. He is also a devoted Christian who regularly attends his church where he serves in any needed capacity.

### *Objections to the PSI Report*

As noted in our letter on March 13, 2008, Mr. DeAngelis had the following objections to the specified sections of the PSI Report:

50. Mr. DeAngelis' father and brother's first name is Louis, not Luis.
52. The word <u>defendant</u> is missing from the first sentence. Mr. DeAngelis' wife's last name is <u>Anzisi</u>, not Nazisi as indicated in the report
54. Mr. DeAngelis is referred to as Albert Alfonso, which is clearly not his name.
64. Mr. DeAngelis' assets are mislabeled. Officer Flemen indicated that Mr. DeAngelis receives $ 729,000 a month as proceeds from the sale of a store front property. In actuality, Mr. DeAngelis and his wife receive $ 800 every other month. His actual share of the proceeds is $ 400 every other month. As indicated in the report, Mr. DeAngelis shares this property with his wife and his sister-in- law. The sister-in-law receives the $ 800 mortgage payment during the alternating months.

### *Acceptance of Responsibility*

Mr. DeAngelis has accepted full responsibility for his actions in this matter.

### *Letters of Recommendation In Support of Mr. DeAngelis*

In an effort to demonstrate the true character of Mr. DeAngelis beyond the charge to which he pleaded, attached as Exhibits, are letters attesting to his good nature, care for others, family devotion, and his sincere kindness. He is described as a loving father, husband, and friend who endeavors to ensure that those around him are emotionally and financially supported.

LAW OFFICES OF
# Murray Richman

As Your Honor will read, the common theme of these letters is that Mr. DeAngelis cares more about others than he does about himself. In a world where it is the norm for persons to put themselves before others, Mr. DeAngelis stands apart. Your Honor will note the countless times that friends and family speak of accounts where they were suffering from personal hardships and it was Mr. DeAngelis who went out of his way to assist them. Even now, with endless feelings of stress, remorse, and fear mounting against Mr. DeAngelis due to his current situation, he has not stopped caring for and helping others.

The first letter comes from Liza DeAngelis, Mr. DeAngelis' second oldest daughter. Liza describes her father as "decent and fair and kind and generous". She elaborates by stating that "[her] father selflessly cares for all around him-brothers, sisters, parents, cousins, nieces, nephews, friends and neighbors, as well as his four daughters and wife."(Ex. A)

Danielle DeAngelis is one of Mr. DeAngelis' twin daughters. She describes Mr. DeAngelis as follows: "My father is the center of my family, the touchstone of his children, and the most honest man I have ever known. He is my go-to-guy when I have any dilemma in my personal life or with my career. I cannot count the times I have heard from friends, neighbors, and total strangers that my father is the greatest guy they have ever known." (Ex. B)

These same sentiments are echoed by Luann DeAngelis, Mr. DeAngelis' younger sister who is currently awaiting a liver transplant. As the Court will note, she describes Mr. DeAngelis as more than a brother. He stepped into the place of their murdered father thirty years ago and continues to be supportive.

As a result of Luann's illness, she has been unable to work for the past two years. Mr. DeAngelis has financially supported his sister and her three children in the interim. As Luann states, "Thanks to Ernie's support, I do not have to worry about what might happen to my children in the near or distant future- no matter what happens to me. I have been able to rest in the knowledge that like myself, my children will be able to depend on Ernie to provide for their needs." (Ex. C).

Then there is the letter from Dr. Marc Werner, Mr. DeAngelis' friend and physician for over 25 years. Dr. Werner characterizes his friend Ernie as "an extremely caring and very generous man." Dr. Werner expresses his admiration for Mr. DeAngelis and for his accomplishments "despite humble beginnings...all the while dealing with his own mental illness." Dr. Werner provides the Court with his knowledge of Mr. DeAngelis' mental condition which he describes as a "significant manic depressive illness (Ex. D)

3

LAW OFFICES OF
# Murray Richman

The Court is also in receipt of letters from Salvatore Cucchiari and Charles DeFranza who both provide specific accounts of their personal tragedies and the manner in which Mr. DeAngelis provided emotional support to their families. Mr. Cucchiari recounts the day that he received a telephone call that his twenty-two year old daughter had been shot dead by her ex-boyfriend

> This December 8th will be exactly one year to the day.
> My 22-year old daughter- a brilliant and talented senior
> at Old Dominion University –was shot dead outside of
> a Northfolk Virginia restaurant by her ex-boyfriend. I dropped
> the phone and fell to the floor in what can only be called fetal
> shock. An immediate call from my wife and Ernie and his
> wife Camille were there within minutes. For the next several hours,
> Ernie sat with me, listened, and talked to me about the tragedies in
> his own life. The strength and compassion of his presence that
> night pulled me out of the first terrible shock of grief- a place I
> pray I will never see again in my life.

Mr. Charles DeFranza provides instances when he was hospitalized and his wife was in a car accident and the support that they both received from Mr. DeAngelis who called very day and provided visits that uplifted their spirits. (Ex. D)

We then direct the Court's attention to the letter from Mr. DeAngelis's wife, Camille. In her letter, she writes about Mr. DeAngelis' commitment to his friends and family, his trustworthiness, his ability to overcome adversity even through several bouts of depression, and his pride in his children who are all college graduates and extremely accomplished. However, her simplest, yet more profound comment is "After thirty-eight years, I still can't wait to see him when he comes through the door with that megawatt smile." (Ex. E)

There are additional letters of support which offer insight into Mr. DeAngelis's character and provide the Court with a picture of a man outside of his actions. These letters were grouped together as they represent shared sentiments of Mr. DeAngelis's general character. (Ex. F)

It is not our intention to minimize the crime for which Mr. DeAngelis has accepted responsibility and pleaded guilty to. However, the letters in support of this individual paint a picture that can not be overlooked. The charges notwithstanding, Mr. DeAngelis has had a great impact on the people whose lives he has touched.

LAW OFFICES OF
# Murray Richman

*The Court should impose the minimum sentence*

The Supreme Court has held that the sentencing guidelines are advisory. Thus, before imposing sentence the Court must "consult" the applicable Sentencing Guidelines range and take them into account (*United States v. Cooper*, 437 F.3d 324, 325 (3rd Cir. 2006)), as well as the other factors that are listed in Title 18 U.S.C. § 3553(a). *Id.*; *see also*, *United States v. Garcia*, 413 F.3d 201, 220 n. 15 (2d Cir. 2005) (citing *United States v. Crosby*, 397 F.3d 103, 111-12 (2nd Cir. 2005)).

We respectfully request that the Court consider the factors set forth in Title 18 U.S.C. § 3553(a) as relevant in the case at bar. These include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

When imposing sentence under the factors set forth in § 3553(a), Courts are instructed to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

We recognize that the Court must impose sentence. However, given all of the factors that the Court will consider, including Mr. DeAngelis's role and status to his family, his non-existent criminal history, his strong community ties, his work history, and his mental health, we respectfully ask this Court to impose a sentence upon Mr. DeAngelis that is reflective of an effort to rehabilitate individuals who are not criminals, but have temporarily departed from their general comportment, and in whom there is a realistic expectation that they will be full contributive members of society.

5

LAW OFFICES OF
# Murray Richman

For the reasons set forth herein, coupled with further arguments that we will present on the day of sentencing, we implore the Court to take a lenient stance when imposing sentence on Mr. DeAngelis.

Respectfully submitted,

*Murray Richman, Esq.*
*Attorney for Defendant*

MR/gk

CC:   Mr. David Massey
      Assistant U.S. Attorney
      Southern District of New York
      The Silvio J. Mollo Building
      One Saint Andrew's Plaza
      New York, NY 10007